UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| CYNTHIA M. LOUGHRIE ) | CASE NO.  5:13CV1761 |
| ) | |
| Plaintiff ) | MAGISTRATE JUDGE |
| ) | GEORGE J. LIMBERT |
| v. ) | |
| ) | **MEMORANDUM AND OPINION** |
| COMMISSIONER OF SOCIAL ) | |
| SECURITY ADMINISTRATION ) | |
| ) | |
| ) | |
| Defendant. ) | |

Plaintiff requests judicial review of the final decision of the Commissioner of Social Security denying Cynthia M. Loughrie Disability Insurance Benefits (DIB). The Plaintiff asserts that the Administrative Law Judge (ALJ) erred in his April 13, 2012 decision in finding that Plaintiff was not disabled because she remained capable of performing a limited range of medium exertional work (Tr. 24, Finding 7). The Court finds that substantial evidence supports the ALJ's decision for the following reasons:

## I.     PROCEDURAL HISTORY

Plaintiff, Cynthia M. Loughrie, filed her application for DIB on March 19, 2010, alleging she became disabled on February 14, 2009 (Tr. 117). Plaintiff's application was denied initially and on reconsideration (Tr. 76-79, 88-94). Plaintiff requested a hearing before an ALJ, and, on March 27, 2012, a hearing was held where Plaintiff appeared with counsel and testified before an ALJ, and

Barbara Burke, a vocational expert (VE), also testified (Tr. 30-73).

On April 13, 2012, the ALJ issued his decision, finding Plaintiff not to be disabled (Tr. 13-29). Plaintiff requested a review before the Appeals Council, and the Appeals Council denied Plaintiff's request for review (Tr. 1-8).  Therefore, Plaintiff has requested judicial review of the Commissioner's final decision pursuant to 42 U.S.C. Sections 405(g).

## II.     STATEMENT OF FACTS

Plaintiff was born on October 15, 1954, which made her fifty-four years of age, which is defined as an individual closely approaching advanced age, on the alleged onset date.  Plaintiff has a high school education, as well as vocational training as a licensed practical nurse (Tr. 37), and past work experience as a nurse's assistance, cashier/wrapper, stock clerk, sales attendant, and material handler (Tr. 63-64).

## III.    SUMMARY OF MEDICAL EVIDENCE

### A.     Physical Impairments.

On June 1, 2007, Plaintiff went to the emergency room with complaints of low back pain after she hurt her back bending over to pick something up at her job (Tr. 311).  A physical examination revealed paraspinal spasms in the low sacral spine with tenderness to palpation, no midline tenderness, and no obvious step-offs or bony abnormalities (Tr. 311).  Examination of Plaintiff's extremities was normal with fully intact strength, and a straight leg raising test was negative bilaterally (Tr. 312).  Plaintiff was diagnosed with acute lumbosacral muscle strain with spasm, and was discharged to her home in stable condition with prescriptions for Norflex and Vicodin, and instructions to take Ibuporofen and apply moist heat (Tr. 312).

2

On June 4, 2007, x-rays of Plaintiff's lumbar spine showed very mild multilevel degenerative disc disease, but were otherwise unremarkable (Tr. 309). R.C. Burns, M.D., Plaintiff's primary care physician, wrote Plaintiff a note to excuse her from work until June 11, 2007 (Tr. 313).

On April 6, 2009, Plaintiff saw John C. Kromalic, D.O., a primary care physician associated with Dr. R.C. Burns (Tr. 287). Dr. Kromalic reported that Plaintiff had no neurologic deficits, and she was able to stand on her tiptoes and heels with no difficulty (Tr. 287).

On October 11, 2010, Dr. R.C. Burns prescribed Motrin for Plaintiff's complaints of joint pain (Tr. 290).

On December 14, 2010, Plaintiff underwent x-rays of her lumbosacral spine, which showed degenerative disc disease changes at L2-3 and L3-4 (Tr. 386).

On August 13, 2011, Plaintiff went to the emergency room with complaints of left arm and jaw pain (Tr. 399). The ER physician opined that Plaintiff's pain was likely musculoskeletal, but admitted her to the hospital for observation to rule out cardiac issues (Tr. 401). A chest x-ray revealed a normal heart and pulmonary hyperinflation (Tr. 406). A stress test was negative for exercise-induced ischemia at 82% of predicted maximal heart rate (Tr. 407). An echocardiogram revealed only mild mitral and mild tricuspid regurgitation (Tr. 409). Plaintiff was discharged to her home on the same day with diagnoses of chest pain, radiculopathy, tobacco abuse, and COPD (Tr. 403).

On January 16, 2012, Plaintiff sought treatment from Lauren N. Burns, D.O., a primary care physician associated with Dr. R.C. Burns, for complaints of joint and back pain (Tr. 416). Dr. Burns observed no focal motor or sensory neurologic deficit, and Plaintiff was able to stand on her tiptoes and heels without difficulty (Tr. 416). Dr. Burns referred Plaintiff for MRI's of her cervical and lumbosacral spines (Tr. 416).

An MRI of Plaintiff's lumbar spine, on January 19, 2012, revealed a large concentric bulging disc at L3-L4 with minor ligamenum flavum hypertrophy and stenosis in the lateral recesses and foraminal narrowing; a left lateral disc protrusion at L4-L5 projecting into the neural foramen, resulting in narrowing along with a concentric bulging disc; and a minor bulging disc at L2-L3 (Tr. 432). An MRI of Plaintiff's cervical spine showed a left paramedian spondylitic protrusion at C6-C7, resulting in minor effacement upon the thecal sac without significant cord compression (Tr. 435).

On February 8, 2012, Plaintiff underwent an MRI of her right knee, which revealed degenerative findings with spurring, hyaline cartilage irregularity, and minimal bone bruising (Tr. 427). An MRI of Plaintiff's left knee revealed degenerative findings with spurring and hyaline cartilage irregularity, predominantly involving the patella (Tr. 429).

B.  Pulmonary Symptoms.

On June 30, 2008, Plaintiff underwent chest x-rays, which showed possible lung scarring (Tr. 244). On August 1, 2008, Plaintiff underwent chest x-rays, which showed no specific acute abnormality, but possible scarring in the right upper lung field (Tr. 245).

On September 26, 2008, Thomas A. Gibbs, D.O. reported that Plaintiff had been diagnosed with bronchitis, and prescribed Zithromax (Tr. 240). However, Plaintiff continued to cough and display symptoms, so he changed her medication to Avelox (Tr. 240).

On October 8, 2008, Plaintiff underwent a CT scan of her chest, which suggested pleural-parenchymal fibrotic scarring along the posterolateral right upper lobe (Tr. 246).

On April 6, 2009, Plaintiff saw Dr. Kromalic (Tr. 287). She denied any shortness of breath (Tr. 287). Plaintiff's lungs were clear to auscultation and good air exchange was appreciated, with no wheezing, rhonchi, or rales (Tr. 287).

On November 2, 2009, Plaintiff underwent a noncontrast CT of the thorax, which revealed a hiatal hernia and stable pleural parenchymal scarring in the right lung (Tr. 276).

On March 4, 2010, Dr. R.C. Burns diagnosed Plaintiff with chronic bronchitis (Tr. 288). He prescribed an Advair inhaler and a rescue inhaler (Tr. 288).

On October 11, 2010, Dr. R.C. Burns diagnosed Plaintiff with acute asthma/COPD (Tr. 289). He prescribed an Advair inhaler and Prednisone (Tr. 289).

On March 13, 2010, Plaintiff went to the emergency room with complaints of a rash (Tr. 265). Plaintiff denied any respiratory problems, and an ER nurse's examination of Plaintiff's lungs revealed no wheezes, rales, rhonchi, or diminished breath sounds (Tr. 267. 291).

On November 21, 2011, Dr. Lauren N. Burns diagnosed Plaintiff with bronchitis, and prescribed a Z-Pak and Symbicort (Tr. 418). Dr. Burns instructed Plaintiff to continue using her ProAir inhaler for shortness of breath, as needed (Tr. 418).

On January 16, 2012, Dr. Lauren N. Burns reported that Plaintiff's lungs were clear to auscultation with good air exchange appreciated and no wheezing, rhonchi, or rales (Tr. 416).

A pulmonary function test, on January 26, 2012, showed moderate airflow obstruction with no response to aerosolized bronchodilators, moderately reduced maximal voluntary ventilation, and borderline restrictive ventilator defect (Tr. 430).

C. Physician Diagnosis.

On March 4, 2010, Dr. R.C. Burns completed a Basic Medical Form for Ohio Job and Family Services, in which he opined that Plaintiff was "unable to work because of persistent respiratory distress" (Tr. 252-53).

In April of 2010, Dr. R.C. Burns completed a form for the Ohio DDS, indicating that he had treated Plaintiff from November of 2008 through March of 2010 for respiratory problems (Tr. 258). Dr. Burns indicated that he had prescribed Albuterol inhalers, and Plaintiff did not require steroids, mechanical ventilation, or supplemental oxygen (Tr. 259). On examinations, Plaintiff had rhonchi, wheezing, rales, and prolonged expiration, and two episodes of pneumonia over the past twelve months (Tr. 259). However, she did not require any visits to the ER or hospital admissions (Tr. 259).

On June 17, 2010, Gregory A. Moten, D.O. performed a consultative physical examination (Tr. 352). Plaintiff complained of slight pain in the lumbar spine, respiratory problems, and trouble with her feet and legs, including cramping in her calves (Tr. 353). Dr. Moten observed that Plaintiff's gait was normal without the use of an assistive device, and she was able to drive a car (Tr. 356). Dr. Moten reported that Plaintiff's lungs were clear to auscultation in all fields (Tr. 355). Examination of Plaintiff's extremities was completely normal with no sensory abnormalities (Tr. 355). Plaintiff's range of motion of the lumbar spine was within normal limits with no spasm (Tr. 355). Heel and toe walking were not accomplished, but Plaintiff's tandem walking was normal, and she was able to squat (Tr. 355). A neurologic examination was completely normal with no muscle asymmetry or atrophy, normal sensation and reflexes, and normal muscle tone (Tr. 355). A pulmonary function study revealed moderate obstruction that did not change with bronchodilators (Tr. 369). Dr. Moten's diagnoses included moderate COPD and moderate arthritis of the back (Tr. 355). Dr. Moten opined that Plaintiff's overall level of functioning was high, and that she was physically capable of performing medium work (Tr. 356). Based on his examinations, Dr. Moten found no evidence of any permanent work restrictions related to Plaintiff's COPD (Tr. 356).

On July 6, 2010, Willa Caldwell, M.D., a state agency physician, reviewed Plaintiff's medical records and opined that she was capable of performing medium work that required no more than occasional climbing of ladders, ropes, and scaffolds, and avoided concentrated exposure to respiratory irritants (Tr. 374-80).

On December 4, 2010, Lisa Schroeder, M.D. performed a consultative physical examination (Tr. 383). Plaintiff's chief complaints were of symptoms related to COPD and arthritis in her back and knees (Tr. 383). Plaintiff reported that she lived in a house with her husband and son (Tr. 383). She was able to drive a car and go up and down the basement steps of her house one step at a time, using a railing for support (Tr. 384). Plaintiff did not use a cane or a walker, and she was able to bathe, dress herself, cook, and clean in short spurts (Tr. 384). She had never required any physical therapy, injections, chiropractic treatment, or surgery for her arthritis pain (Tr. 383). She used Advair and ProAir inhalers, and took Ibuprofen and Aspirin (Tr. 384). Plaintiff's lungs were clear to auscultation with no wheezes, rubs, or rhonchi (Tr. 84). A musculoskeletal exam revealed no edema in Plaintiff's extremities, decreased range of motion in her shoulders, and slightly decreased range of motion in her neck (Tr. 384). Plaintiff did not appear to be short of breath, her gait was normal, and she had slight difficulty with heel-to-toe walking (Tr. 384). Dr. Schroeder noted no specific muscle atrophy or muscle spasms in Plaintiff's back or legs (Tr. 384). Dr. Schroeder diagnosed COPD with frequent exacerbations, degenerative disc disease, degenerative joint disease, and chronic pain (Tr. 384). Dr. Schroeder opined that Plaintiff could lift up to fifteen pounds frequently; walk for twenty to thirty minutes at a time for up to three to four hours a day; stand for ten to fifteen minutes at a time for one to two hours a day; sit for forty to sixty minutes at a time for up to eight hours a day; and should not work around temperature extremes, fumes, or smoke (Tr. 384).

On January 11, 2011, Dimitri Teague, M.D., a state agency physician, reviewed Plaintiff's medical records and opined that she was capable of performing light work that required no climbing of ladders, ropes, or scaffolds, and no more than occasional climbing of ramps or stairs, stooping, kneeling, crouching, or crawling (Tr. 393). Dr. Teague opined that Plaintiff should avoid concentrated exposure to temperature extremes, wetness, humidity, and respiratory irritants (Tr. 395).

On March 16, 2012, Dr. Lauren N. Burns completed a Physical Residual Functional Capacities Assessment form (Tr. 436). Dr. Burns opined that Plaintiff could occasionally lift/carry up to ten pounds, and frequently lift/carry up to five pounds (Tr. 436). Dr. Burns opined that Plaintiff could stand/walk for less than one hour, and sit for less than one hour in an eight-hour workday (Tr. 436). She opined that Plaintiff was limited with regard to her abilities to push and pull with both her upper and lower extremities (Tr. 436). She opined that Plaintiff was limited to occasional climbing of ramps, stairs, ladders, ropes, and scaffolds; balancing; stooping; kneeling; crouching; crawling; reaching; handling; fingering; and feeling (Tr. 436-37). She opined that Plaintiff was limited with regard to hearing; needed to avoid concentrated exposure to vibration; and needed to avoid even moderate exposure to temperature extremes, wetness, humidity, noise, respiratory irritants, and hazards (Tr. 437). Dr. Burns noted that Plaintiff had reduced range of motion in her neck, low back, and knees, and 4/5 strength in her upper and lower extremities (Tr. 438). She opined that Plaintiff needed to change positions from sitting to standing; lay down on and off throughout the day; elevate her lower extremities while sitting or lying; and use an assistive device for ambulation (Tr. 438). Dr. Burns opined that, on average, Plaintiff would miss three or more days of work per month (Tr. 438).

## IV.     **SUMMARY OF TESTIMONY**

Plaintiff has a high school education, as well as vocational training as a licensed practical

nurse (Tr. 37). Her past relevant work consisted of jobs as a nurse's assistant, cashier/wrapper, store clerk, sales attendant, and materials handler (Tr. 63-64). Plaintiff testified that she became unable to work in 2008 because of problems related to arthritis, degenerative disc disease, degenerative joint disease, and respiratory problems (Tr. 39).  Although Plaintiff had cut down on her smoking, she continued to smoke less than a pack of cigarettes each day (Tr. 48).  Plaintiff testified that her inhaler helped her shortness of breath (Tr. 45). Plaintiff testified that she did very little throughout the day, but she sometimes helped with dinner, and she spent a great deal of time reading in bed (Tr. 52).  She also went to the grocery store on occasion, did some vacuuming, dish washing, and cleaning; cared for her pet cat; and washed laundry, although she did not carry any baskets (Tr. 49-53).

After the Plaintiff testified, the ALJ asked the VE to assume a hypothetical individual with Plaintiff's vocational characteristics who was limited to medium work that required no more than occasional climbing of ladders, ropes, and scaffolds, and no concentrated exposure to fumes, odors, dust, gases, and poor ventilation (Tr. 66).  The VE testified that Plaintiff would be capable of performing her past relevant work as a cashier/wrapper, stock clerk, and sales clerk, or, in the alternative, would be capable of making a vocational adjustment to over 500,000 jobs in the national economy (Tr. 66-67).

## V.     STEPS TO EVALUATE ENTITLEMENT TO SOCIAL SECURITY BENEFITS

An ALJ must proceed through the required sequential steps for evaluating entitlement to disability insurance benefits.  These steps are:

1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (Sections 20 C.F.R. 404.1520(b) and 416.920(b) (1992);

2. An individual who does not have a "severe impairment" will not be

9

>
> found to be "disabled" (Sections 20 C.F.R. 404.1520(c)and 416.920(c)(1992);
>
> 3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement, *see* Sections 20 C.F.R. 404.1509 and 416.909 (1992), and which meets or is equivalent to a listed impairment in Sections20 C.F.R. Pt. 404, Subpt. P, App. 1, a finding of disabled will be made without consideration of vocational factors (Sections 20 C.F.R. 404.1520(d) and 416.920(d) (1992);
>
> 4. If an individual is capable of performing the kind of work he or she has done in the past, a finding of "not disabled" must be made (Sections 20 C.F.R. 404.1520(e) and 416.920(e) (1992);
>
> 5. If an individual's impairment is so severe as to preclude the performance of the kind of work he or she has done in the past, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed (Sections 20 C.F.R. 404.1520(f) and 416.920(f) (1992).

*Hogg v. Sullivan,* 987 F.2d 328, 332 (6th Cir. 1992). The claimant has the burden of going forward with the evidence at the first four steps and the Commissioner has the burden at Step Five to show that alternate jobs in the economy are available to the claimant, considering her age, education, past work experience and residual functional capacity. *See, Moon v. Sullivan,* 923 F.2d 1175, 1181 (6th Cir. 1990).

## VI. STANDARD OF REVIEW

Under the Social Security Act, the ALJ weighs the evidence, resolves any conflicts, and makes a determination of disability. This Court's review of such a determination is limited in scope by Section 205 of the Act, which states that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. Section 405(g). Therefore, this Court is limited to determining whether substantial evidence supports the

Commissioner's findings and whether the Commissioner applied the correct legal standards. *See, Abbott v. Sullivan,* 905 F.2d 918, 922 (6th Cir. 1990). The Court cannot reverse the ALJ's decision, even if substantial evidence exists in the record that would have supported an opposite conclusion, so long as substantial evidence supports the ALJ's conclusion. *See, Walters v. Commissioner of Social Security,* 127 F.3d 525., 528 (6th Cir. 1997). Substantial evidence is more than a scintilla of evidence, but less than a preponderance. *See, Richardson v. Perales,* 402 U.S. 389, 401 (1971). It is evidence that a reasonable mind would accept as adequate to support the challenged conclusion. *See, id., Walters,* 127 F.3d 525, 532 (6th Cir. 1997). Substantiality is based upon the record taken as a whole. *See, Houston v. Secretary of Health and Human Servs.,* 736 F.2d 365 (6th Cir. 1984).

### VII.   ALJ'S DECISION

The ALJ found that Plaintiff had COPD/asthma, degenerative disc disease of the cervical and lumbar spines, and degenerative joint disease of the bilateral knees, impairments that were severe, but that did not meet or equal the criteria of any of the listed impairments (Tr. 18-19, Findings 3-4). The ALJ found that Plaintiff had the residual functional capacity to perform work consistent with the limitations that he presented in his hypothetical question to the VE (Tr. 19, Finding 5). The ALJ found that Plaintiff was capable of performing her past relevant work as a cashier wrapper, stock clerk, and sales attendant, or, in the alternative, was able to make a vocational adjustment to a significant number of other jobs in the national economy (Tr. 22-23, Finding 6). Accordingly, the ALJ found that Plaintiff was not disabled at any time through the date of his decision (Tr. 24, Finding 7).

### VIII.   ANALYSIS

Plaintiff raises two legal issues:

11

>    A.   The Administrative Law Judge (ALJ) failed to adhere to the requirements of the treating source rule in his evaluation of the opinions offered by Plaintiff's treating physician, Dr. Lauren Burns. The ALJ failed to adhere to the requirements of the rules for the evaluation of opinion evidence regarding the opinions offered by Dr. Lisa Schroeder, an examining physician, hired by the State Disability Determination Service (DDS) to perform an independent internal medicine evaluation.
>
>    B.   The ALJ's residual functional capacity ("RFC") assessment is not supported by substantial evidence.

Plaintiff first argues that in finding that she was not disabled, the ALJ failed to follow the treating source rule (Pl.s Br. at 5).  Specifically, Plaintiff argues that the ALJ should have given controlling weight to Dr. Lauren Burns' March 12, 2012 opinion that Plaintiff's impairments were incompatible with the ability to perform substantial gainful activity (Pl.s Br. at 11).  The Court finds that the ALJ thoroughly evaluated the physician opinion evidence in accordance with Social Security law, and his conclusions are supported by substantial evidence.

The opinion of a treating physician as to the nature and severity of an impairment is only entitled to controlling weight if it is well supported by medically-acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the case.  20 C.F.R. Section 404.1527©.  It is the duty of the ALJ, and not the reviewing court, to determine the weight to be given to conflicting medical opinions. *Richardson v. Perales*, 402 U.S. 389, 399 (1971). An ALJ is required to provide good reasons for the weight given to a treating source's opinion.  *See, Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

Although there is a presumption that the opinion of a treating physician is entitled to great deference, its controlling status notwithstanding, this is a rebuttable presumption.  *See, Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007).  Where a treating physician's opinion is


>    A.   The Administrative Law Judge (ALJ) failed to adhere to the requirements of the treating source rule in his evaluation of the opinions offered by Plaintiff's treating physician, Dr. Lauren Burns. The ALJ failed to adhere to the requirements of the rules for the evaluation of opinion evidence regarding the opinions offered by Dr. Lisa Schroeder, an examining physician, hired by the State Disability Determination Service (DDS) to perform an independent internal medicine evaluation.
>
>    B.   The ALJ's residual functional capacity ("RFC") assessment is not supported by substantial evidence.

Plaintiff first argues that in finding that she was not disabled, the ALJ failed to follow the treating source rule (Pl.s Br. at 5).  Specifically, Plaintiff argues that the ALJ should have given controlling weight to Dr. Lauren Burns' March 12, 2012 opinion that Plaintiff's impairments were incompatible with the ability to perform substantial gainful activity (Pl.s Br. at 11).  The Court finds that the ALJ thoroughly evaluated the physician opinion evidence in accordance with Social Security law, and his conclusions are supported by substantial evidence.

The opinion of a treating physician as to the nature and severity of an impairment is only entitled to controlling weight if it is well supported by medically-acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the case.  20 C.F.R. Section 404.1527©.  It is the duty of the ALJ, and not the reviewing court, to determine the weight to be given to conflicting medical opinions. *Richardson v. Perales*, 402 U.S. 389, 399 (1971). An ALJ is required to provide good reasons for the weight given to a treating source's opinion.  *See, Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

Although there is a presumption that the opinion of a treating physician is entitled to great deference, its controlling status notwithstanding, this is a rebuttable presumption.  *See, Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007).  Where a treating physician's opinion is

inconsistent with the objective medical evidence, it is not entitled to such deference. *See, Warner v. Comm'r of Soc. Sec.*, 375 F. 3d 387, 390 (6th Cir. 2004).

Here, the ALJ explained that he gave very little weight to Dr. Burns' opinion that Plaintiff's limitations were inconsistent with the ability to perform full-time work because Dr. Burns' opinion was inconsistent with the evidence as a whole, and was not even supported by Dr. Burns' own clinical findings (Tr. 22). The ALJ thoroughly reviewed the medical evidence in this case (Tr. 20-22). The ALJ noted that Plaintiff's physical examinations revealed that she had full range of motion, a normal gait and station, no muscle weakness or spasms, satisfactory deep tendon reflexes and strength, the ability to squat, and no sensory abnormalities or atrophy (Tr. 20, 287, 312, 355-56, 416). Although Plaintiff argues that Plaintiff's MRI's in January and February of 2012 support Dr. Burns' opinions (Pl.s Br. at 12), Dr. Lauren Burns' own examination findings from January of 2012 showed that Plaintiff had no focal motor or sensory neurologic deficits, and was able to stand on her tiptoes and heels without difficulty (Tr. 416).

The ALJ also noted that Plaintiff required only conservative treatment from her primary care physician (Tr. 20). Plaintiff admitted that her conservative treatment with over-the-counter pain relievers and rest helped relieve her low back symptoms (Tr. 20, 353, 399). Additionally, despite her low back pain, Plaintiff was able to drive a car, did not require any assistive devices for ambulation, and was able to take care of her personal hygiene, dress herself, vacuum on occasion, do some other housecleaning and dish washing, care for her pet cat, walk up and down the stairs of her home, and do laundry (although she did not carry any baskets) (Tr. 21, 37, 49, 53-54, 384). Since Dr. Lauren Burns' opinion that Plaintiff suffered from disabling physical limitations was not supported by both medical evidence and Plaintiff's daily activities, the ALJ was entitled to discount it.

The ALJ was not required to discuss each and every factor mentioned in 20 C.F.R. Section 404.1527(c) in evaluating Dr. Burns' opinion (Pl.s Br. at 13-14). All that is required is that the ALJ

13

provide some explanation for why he finds a treating physician's opinion to be lacking. *See, McGrew v. Comm'r of Soc. Sec.*, 343 F.App'x 26, 30-31 (6th Cir. 2009). Here, the ALJ complied with his statutory obligation in evaluating Dr. Lauren Burns' opinion, because he provided a lengthy, accurate, and thorough discussion of the evidence and gave valid reasons for finding that Dr. Lauren Burns' opinion was not entitled to deference under the treating source rule. *See, Gaskin v. Comm'r of Soc. Sec.*, 280 F. App'x 472, 476 (6th Cir. 2008).

Plaintiff next argues that the ALJ also erred in his evaluation of the opinions of Drs. Teague, Moten, Caldwell, and Schroeder (Pl.'s Br. at 9-14). However, here, also, the ALJ's decision is supported by substantial evidence.

Plaintiff argues that there are "major inconsistencies" in the ALJ's treatment of the opinions provided by Dr. Caldwell(state agency reviewing physician), Dr. Moten (consultative examining physician), Dr. Teague (state agency reviewing physician work restrictions), and Dr. Schroeder (Pl.'s Br. at 9). Specifically, she argues that it was inconsistent for the ALJ to assign little weight to Dr. Teague's opinion, in part, because most of the medical evidence post-dated his opinion, while finding it to be of no consequence that Drs. Moten and Caldwell also did not have the benefit of reviewing the later-submitted evidence in the record (Pl.'s Br. at 9). However, the ALJ stated that he considered that all three physicians–Drs. Moten, Caldwell, and Teague–did not have the benefit of reviewing the entire record when issuing their opinions (Tr. 21-22). He explained that he gave significant weight to the opinions of Drs. Moten and Caldwell because their opinions were substantially consistent with the later-submitted evidence (Tr. 21). The ALJ explained that he gave little weight to Dr. Teague's opinion because "nothing in the record at the time of Dr. Teague's opinion, or since then, supports the exertional limitation of this magnitude" (Tr. 22). Hence, the ALJ's treatment of these three opinions was not inconsistent, and the ALJ adequately explained his reasons for assigning less weight to Dr. Teague's assessment.

14

Plaintiff next argues that the ALJ should have assigned less weight to the opinions of Drs. Moten and Caldwell, because their opinions were inconsistent with later-submitted evidence–specifically, with Plaintiff's January 26, 2012 pulmonary function test, and with the January and February 2012 MRI's of her lumbar spine, cervical spine, and knees (Pl.'s Br. at 10, 429-35). However, the results of diagnostic testing are not dispositive of the issue of an individual's functional limitations. Here, Dr. Lauren Burns' clinical testing from January of 2012 demonstrated that, whatever the results of Plaintiff's MRI studies, Plaintiff had no focal motor or sensory deficits, and she was able to stand on her tiptoes and heels without difficulty (Tr. 416). Likewise, although pulmonary function testing demonstrated that Plaintiff had a moderate airflow obstruction, Dr. Lauren Burns reported that her lungs were clear to auscultation with good air exchange appreciated and no wheezing, rhonchi, or rales (Tr. 416). Therefore, since contemporaneous clinical findings demonstrated that Plaintiff's musculoskeletal and pulmonary diagnoses did not cause any functional limitations that were inconsistent with the ability to perform a limited range of medium work, the ALJ correctly gave significant weight to the opinions of Drs. Moten and Caldwell.

Plaintiff also argues that the ALJ erred in assigning little weight to Dr. Schroeder's opinion that Plaintiff was limited from carrying more than fifteen pounds frequently and ten pounds occasionally, walking more than twenty to thirty minutes at a time and for no more than three to four hours per day, standing for more than ten to fifteen minutes at a time and for more than one to two hours per day, sitting for more than forty to sixty minutes at a time for up to eight hours per day, and working around temperature extremes or heat (Tr. 11). Plaintiff argues that the ALJ mischaracterized Dr. Schroeder's opinion in deducing that it was likely based on Plaintiff's subjective complaints rather than on the objective medical evidence, because Dr. Schroeder did not specifically state that she was basing her opinion on Plaintiff's subjective complaints (Tr. 11). However, as the ALJ explained, he made this assumption because Dr. Schroeder's examination findings were inconsistent with the more

15

severe limitations that she assigned to Plaintiff's functioning (Tr. 21). Dr. Schroeder's opinion regarding Plaintiff's limitations was inconsistent with her findings that Plaintiff's gait was normal; she had no muscle atrophy or spasms in her back or legs; her lungs were clear to auscultation with no wheezes, rubs, or rhonchi; she had no edema in any of her extremities; and she had only slightly decreased range of motion in her shoulders and neck (Tr. 384). Nevertheless, Dr. Schroeder's opinion was consistent with Plaintiff's own description of her limitations–that she could walk for only one hundred feet, stand for only ten minutes at a time, sit for about thirty minutes, and lift only five to ten pounds (Tr. 384). Since Dr. Schroeder's opinion was inconsistent with the objective medical evidence and consistent with Plaintiff's self-described symptoms, the ALJ correctly concluded that Dr. Schroeder's opinion was primarily based on the latter description.

Next, Plaintiff argues that the MRI testing and pulmonary function testing from January and February 2012 support Dr. Schroeder's opinion that Plaintiff was more greatly limited than found by the ALJ (Pl.'s Br. at 11). However, the relevant consideration in this case is not Plaintiff's diagnoses, but her functional limitations, and the clinical findings that were contemporaneous with the 2012 diagnostic testing, which did not support a greater level of limitation than that determined by the ALJ.

The ALJ's residual functional capacity finding considered all of Plaintiff's credible functional limitations. The ALJ considered the limitations imposed by Plaintiff's musculoskeletal problems by limiting her to light work that required only occasional climbing of ladders, ropes, and scaffolds (Tr. 19, Finding 5). The ALJ also considered the limitations imposed by Plaintiff's COPD, by limiting her to work that did not involve any concentrated exposure to fumes, odors, dusts, gases, or poor ventilation (Tr. 19, Finding 5).

Finally, based on a hypothetical question that accounted for all of Plaintiff's limitations, a vocational expert testified that Plaintiff would be capable of performing her past relevant work as a cashier/wrapper, stock clerk, and sales clerk, or, in the alternative, would be capable of making a

vocational adjustment to over 500,000 jobs in the national economy (Tr. 66-67).  This testimony constitutes substantial evidence that Plaintiff was not disabled, and, therefore, the ALJ's decision is affirmed.

## IX. CONCLUSION

Based upon a review of the record and law, the undersigned affirms the ALJ's decision. Substantial evidence supports the finding of the ALJ that Plaintiff retained the residual functional capacity (RFC) to perform a limited range of medium exertion work, and, therefore, was not disabled. Hence, she is not entitled to DIB.

Dated: April 15, 2014                                         */s/George J. Limbert*
                                                              GEORGE J. LIMBERT
                                                              UNITED STATES MAGISTRATE JUDGE